**SO ORDERED.**

**SIGNED this 09 day of May, 2011.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ALFRED ANTONIO ZICCARDI | ) | Case No. 10-11965 |
| MIRALDA OLIVIA ZICCARDI | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

### MEMORANDUM OPINION

This case presents three related issues that all ultimately bear upon whether the debtors' plan should be confirmed. The Court must determine if the debtors' homestead exemption is valid. Then, the Court must consider the stay relief motion of Catholic Family Credit Union which requires valuing the alleged homestead. Finally, the Court must determine whether the debtors' plan should be confirmed.

This case was tried to the Court on February 15, 2011. Pending before the Court are: (1)

-1-

Catholic Family Credit Union's (CFCU's) objection to debtors' homestead exemption;[1] (2) CFCU's motion for stay relief;[2] and (3) the debtors' chapter 13 plan and CFCU's objection to confirmation.[3]

Facts

The Debtors filed their bankruptcy case on June 11, 2010. Prior to filing, the Ziccardis purchased a home on 32nd Street North from Maria Arambula, Mrs. Ziccardi's mother. They intended to remodel the home and modify it so that they and Mrs. Arambula could live there together. They granted a purchase money mortgage to Citi Financial; that mortgage secures repayment of approximately $79,000. Then they borrowed $18,600 from CFCU and granted CFCU a second mortgage secured by the 32nd Street house. The proceeds of that loan were to fund the remodeling effort. The Ziccardis commenced remodeling, but were stymied when they encountered problems with the backfill that caused a foundation crack that flooded the basement. They had attempted to add a basement under an added room, but the contractor did not furnish a stem wall. When the foundation was backfilled, the foundation wall cracked and has now been repaired. While this work and the resulting dispute played out, the Ziccardis installed new plumbing, heating, and electrical wiring in the house. They paid over $7,000 to a contractor to do some of the work; the contractor went out of business. Some framing was also done improperly. At the time of filing, based on the photos entered into evidence, much of the house lacked sheet rock, though some

---

[1] Dkt. 17.

[2] Dkt. 15. Pursuant to partial orders entered August 23, 2010 and September 27, 2010, debtors agreed to stay relief with respect to a vehicle, a 2007 Saturn Outlook, and their shares in the credit union, and certain other real property Lots 1 and 3, Block 2, Kansas City Addition to Wichita, Sedgwick County, Kansas (the Burns property) that is not owned by debtors and not subject to the stay. Further, the § 1301 co-debtor stay was lifted as to Maria Arambula. *See* Dkt. 31 and 33.

[3] Dkt. 2, 14.

bathroom fixtures were installed. The house was not yet habitable, though the debtors had been in possession of it since 2008. Mr. Ziccardi clearly espoused his fervent intention to complete the work and move his extended family into the house as soon as he could.

Debtors paid $78,000 for the house in 2007. When they took out the CFCU loan, the credit union relied on a $93,000 appraisal made in 2007 by (Ms.) Kalen Hoffman for the first mortgage-holder. Ms. Hoffman testified that she did not revise or reappraise the property after delivering her work to the Kansas Mortgage Center in October, 2007. She has not viewed the property since. A comparison of the pictures in her appraisal report and the contemporaneous photos exhibited at trial show that the house was in considerably better shape in 2007 than now. The debtors offered the appraisal and testimony of Courtley Jackson who viewed the house shortly before trial and opined that its value was not more than $50,000 in its present condition. Because of the significant damage and unfinished work ongoing, he was required to adjust his two comparable sales by some $100,000. He further estimated that an additional $75,000 might be necessary to get the house habitable and that once that work was done, the house would be worth around $125,000.

The CFCU also offered into evidence the Sedgwick County Appraiser's estimate of the tax value of the home at $155,040, but this evidence was admitted for only limited purposes. This tax value is suspect for several reasons. First, the appraiser did not testify so the Court has no idea what the basis for that number might be. Second, this number represents an unexplained 96% increase in tax valuation over 2008 – a period of near-record deflation in the value of real estate in this city.

Considering Mr. Jackson's appraisal and in light of the decline in home values in Wichita in general, the Court suspects that even if the house had not been stripped and were not under construction at this time, it might well have lost at least ten if not twenty percent of its value from

-3-

2007 to today. If it brought $78,000 in 2007, it could easily be worth as little as $62,400 today ($78,000 - 20% = $62,400), even if it *were* habitable, an amount that would not be sufficient to support any part of CFCU's mortgage. Mr. Jackson's appraisal was not only not meaningfully opposed or impeached, but it is eminently reasonable. The property is worth $50,000 per the Jackson appraisal.

Mr. Ziccardi says that he will continue renovating the house out of his current income, and using sweat equity, move his family in. He intends to finish work on the first floor, allowing them to move in, and finish the rest of the work while living there. His plan provides for ongoing payments to Citi, but for no payments to CFCU, instead stripping down the second lien and treating CFCU as an unsecured creditor. The Trustee does not oppose the plan as it is currently proposed. There does not appear to be any budget for Ziccardi to continue his remodeling work, but it does appear that he has made a substantial investment in the undertaking, one that would be lost entirely were the house to be foreclosed. CFCU opposes the plan as being filed in bad faith, arguing the Ziccardis should abandon this project and start over.

Analysis

1. The Property is Ziccardis' Exempt Honmestead

KAN. STAT. ANN. § 60-2301 codifies Article 15, § 9 of the Kansas Constitution which established that "a homestead, occupied as a residence by the family of the owner" shall be exempted from forced sale. 11 U.S.C. § 522(b) exempts from the estate any property that could be exempted by a debtor at state law on the date of the petition. CFCU argues that the debtors do not occupy the homestead and, indeed, have never lived in it and clearly did not do so at the time of the petition. The debtors respond that they do, in fact, occupy it because they are in possession and

2007 to today. If it brought $78,000 in 2007, it could easily be worth as little as $62,400 today ($78,000 - 20% = $62,400), even if it *were* habitable, an amount that would not be sufficient to support any part of CFCU's mortgage. Mr. Jackson's appraisal was not only not meaningfully opposed or impeached, but it is eminently reasonable. The property is worth $50,000 per the Jackson appraisal.

Mr. Ziccardi says that he will continue renovating the house out of his current income, and using sweat equity, move his family in. He intends to finish work on the first floor, allowing them to move in, and finish the rest of the work while living there. His plan provides for ongoing payments to Citi, but for no payments to CFCU, instead stripping down the second lien and treating CFCU as an unsecured creditor. The Trustee does not oppose the plan as it is currently proposed. There does not appear to be any budget for Ziccardi to continue his remodeling work, but it does appear that he has made a substantial investment in the undertaking, one that would be lost entirely were the house to be foreclosed. CFCU opposes the plan as being filed in bad faith, arguing the Ziccardis should abandon this project and start over.

Analysis

1. The Property is Ziccardis' Exempt Honmestead

KAN. STAT. ANN. § 60-2301 codifies Article 15, § 9 of the Kansas Constitution which established that "a homestead, occupied as a residence by the family of the owner" shall be exempted from forced sale. 11 U.S.C. § 522(b) exempts from the estate any property that could be exempted by a debtor at state law on the date of the petition. CFCU argues that the debtors do not occupy the homestead and, indeed, have never lived in it and clearly did not do so at the time of the petition. The debtors respond that they do, in fact, occupy it because they are in possession and

have been working on the homestead, though they concede they have never lived there. They intend to live there when the work is sufficiently far along.

The party objecting to an exemption bears the burden of proof on all points. Fed. R. Bankr. P. 4003(c). CFCU presented no evidence that refuted the debtors' present occupancy, that they had worked on the homestead, or that they intended to live there.

Kansas law shows that the debtors sufficiently occupy the property to establish it as their homestead. In *Bellport v. Harder*, the Kansas Supreme Court held that the occupancy of the homestead as a residence is an essential element of establishing the homestead, but that once a homesteader took possession, that occupancy was presumed to continue until the occupant took positive and clear action to abandon the homestead.[4] The Court held that occupancy does not mean "physical presence" and contemplates a temporary absence. Later, in *Security State Bank v. Coberly*, the Kansas Court of Appeals held that occupation included preparatory steps to occupy the homestead, even if these steps are, as in this case, thwarted.[5] Following the early case of *Monroe v. May, Weil & Co.* the court held that the homestead is established as of its purchase.[6]

I conclude that the property is the debtors' homestead and has been since its purchase in 2008. They intend to repair, rehabilitate and re-enter it as inhabitants, but have been thwarted by a string of bad luck. Ziccardi and his family are still occupants as the homestead case law suggests. CFCU did not bear its burden to prove otherwise; the objection to the homestead exemption is therefore OVERRULED.

---

[4] 196 Kan. 294, 411 P.2d 725 (1966).

[5] 5 Kan. App. 2d 691, 623 P.2d 544 (1981).

[6] 9 Kan. 466, 1872 WL 650 (1872).

Case 10-11965    Doc# 56    Filed 05/09/11    Page 5 of 8

2.   Stay Relief

CFCU seeks stay relief arguing that the debtors lack equity in the property and that the property is not necessary to an effective reorganization as provided in § 362(d)(2). CFCU bore the burden of proof on the issue of lack of equity and the debtors bear it on all other issues.

As noted above, the Court finds the value of the property as of the hearing date to be $50,000. The sum of the two liens that encumber it exceeds $90,000. CFCU has borne its burden of proving that the debtors lack equity in the property. Whether they can effectively reorganize requires me to analyze many of the same issues that concern whether their plan of reorganization may be confirmed. We move next to that issue.

3.   Plan Confirmation

The debtors bear the burden of proof on all points concerning plan confirmation.

CFCU's success in demonstrating the debtors' lack of equity is a Pyrrhic victory for it at best, for part of debtors' plan involves the stripping of CFCU's lien for lack of equity. At $50,000 of value, there is no equity for CFCU's lien to attach and, if the plan is otherwise confirmable, its lien should be stripped, albeit subject to the plan's conditions that the debtors complete their plan payments.

CFCU principally objects that the plan is not offered in good faith and violates § 1325(a)(3). In this Circuit, whether or not a plan violates the good faith requirement mandates the application of the "Flygare" factors, found in *Flygare v. Boulden*[7] as supplemented by a view of the totality of the circumstances "as well as any other relevant circumstances."[8] Of the eleven *Flygare* factors,

---

[7] 709 F. 2d 1344, 1347-48 (10th Cir.1983).

[8] *See Mason v. Young*, 237 F. 3d 1168, 1174-1174 (10th Cir. 2001).

-6-

only three seem to apply here. The Court considers the (1) the amount of proposed payments and the amount of the debtors' surplus; (2) the existence of special circumstances such as inordinate medical expenses; and (3) the motivation and sincerity of the debtors in seeking Chapter 13 relief.

Regarding payments, the Court concludes that the debtors can make the plan payment contemplated–they can service their debt and, according to the Trustee, they can execute their plan. That they may or may not have the money to continue or complete the remodel is not a reason to assume that they cannot complete their plan as contemplated. As to special circumstances, the debtors bought this house from Mrs. Ziccardi's mother with the intention that she would live with them once it was completed. They are attempting to house an older relative, one who previously lived in the residence in question. The Court is mildly persuaded that this is a special circumstance in this case. As to the Ziccardis' motivation and sincerity, Mr. Ziccardi appears to have been truly unlucky in this venture. Nothing in his testimony or demeanor suggested to me that he was insincere or gaming the system. Indeed, he repeatedly stated his intention to finish the work, doing much of it himself, and to move his extended family into the house. He has been the victim of insolvent or incompetent contractors and has been taken advantage of by a debt-adjustment agency. He has assigned his cause of action against the agency to the Trustee and will prosecute it for the benefit of the estate. He is moving his mother-in-law into his home, not something everyone does. He does not own any other property that the family could occupy and presently inhabits a rental while the work continues. There simply is no bad conduct here as there is in many of the cases. I conclude that debtors offer this plan in good faith and that it should be confirmed with the following proviso.

If the debtors fail to complete their plan, CFCU shall be under no obligation to release the lien that is stripped in the plan. This is what the plan says. Thus, if the debtors fail, CFCU will

regain an enforceable lien, albeit one that is under water and junior to a sizeable first mortgage. The Court therefore concludes that the 32nd Street property is necessary to an effective reorganization and CFCU's motion for relief from the stay is DENIED.

The plan should otherwise be CONFIRMED and the Trustee is directed to prepare the appropriate confirmation order.

# # #